UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

SHANA CARRILLO.  )
         Plaintiff,  )
    )
v.  )    No. 13 CV 50395
  )    Magistrate Judge Iain D. Johnston
CAROLYN COLVIN, Acting  )
Commissioner of Social Security,  )
         Defendant.  )

## MEMORANDUM OPINION AND ORDER

Plaintiff Shana Carrillo brings this action under 42 U.S.C. § 405(g), seeking remand of the decision denying her social security disability benefits. For the reasons set forth below, the case is remanded.

## BACKGROUND[1]

On March 31, 2009, plaintiff filed an application for supplemental security income, alleging a disability beginning on May 1, 2000. R. 109. She was 32 years old at this time. R. 773.

Most of the medical evidence in this case was developed in conjunction with plaintiff's ongoing interactions with the Illinois Department of Children and Family Services ("DCFS"). R. 802. All of plaintiff's five children are in the care of DCFS or other family members. R. 803. As summarized by plaintiff in her opening brief, she has been accused of falsely reporting that one of her children's pediatrician assaulted plaintiff, refusing to cooperate with DCFS regarding sexual abuse allegations against her ex-husband, and exhibiting hostility towards caseworkers. Dkt. # 14 at 3.

---

[1] This background section only summarizes the medical evidence relevant to the arguments made in this appeal.

On June 22, 2009, Kelly Renzi, a clinical psychologist, spent 40 minutes with plaintiff and then issued a written report. R. 675-678; Ex. 32F. Dr. Renzi diagnosed plaintiff with bipolar disorder and noted that plaintiff "was very vague when describing her psychiatric symptoms and continuously reverted back to speaking about her involvement with DCFS." R. 675. Dr. Renzi assessed plaintiff's global assessment functioning ("GAF") as 50. R. 677. Five months later, on November 24, 2009, Dr. Renzi again evaluated plaintiff, spending 45 minutes with her, and issued a second report. R. 591-594; Ex. 20F. Dr. Renzi again diagnosed plaintiff with bipolar illness, but rated her GAF as 55. R. 593.

On May 7, 2010, plaintiff first appeared before the administrative law judge ("ALJ") for this case. Because plaintiff was then unrepresented by counsel, the ALJ asked whether she wanted help to get a lawyer. R. 100. After some prodding by the ALJ, plaintiff agreed to try to get a lawyer and the hearing was rescheduled. R. 102.

In November 2010, plaintiff was examined by Kyle J. Cushing, a licensed clinical psychologist, who issued a report. R. 773-78; Ex. 48F. The reason for this visit was that plaintiff "[had] been told by DCFS to obtain a psychological evaluation before reclaiming custody of her three youngest children." R. 773. Dr. Cushing administered a series of tests, including the MMPI-2, and diagnosed plaintiff with bipolar disorder, ADHD, and generalized anxiety disorder. R. 777. He rated plaintiff's GAF as 45-50. *Id.*

Around this same time, plaintiff went to the Mildred Berry Center two times. R. 88. One of those visits was on November 9, 2010, when plaintiff saw Cathryn Riplinger, a social worker, who diagnosed plaintiff with adjustment disorder with anxiety and ruled out bipolar disorder and ADHD. R. 720. She rated plaintiff's GAF as 55. *Id.*

On January 10, 2011, the first hearing before the ALJ was held. R. 72. Plaintiff appeared without counsel. The ALJ called as an impartial medical expert, Dr. Mark Oberlander, who summarized the medical evidence and concluded that plaintiff did not meet any of the listings for mental disorders. R. 86-93.

On January 21, 2011, the ALJ issued an opinion finding plaintiff not disabled. R. 109-118. However, the Appeals Counsel subsequently remanded the case because it concluded that ALJ placed great weight on Dr. Oberlander but the Appeals Council believed that "Dr. Oberlander's opinion is consistent with the presence of a severe mental impairment" and that "further consideration should be given to whether the claimant has a severe impairment." R. 126-127.

On August 1, 2012, plaintiff was evaluated by Valerie Bouchard, a licensed clinical psychologist. R. 802. On September 30, 2012, Dr. Bouchard issued an 11-page report, diagnosing plaintiff with adjustment disorder, ADHD, paranoid personality disorder, and borderline intellectual functioning. R. 811. She rated plaintiff with a GAF of 45. R. 812.

On November 7, 2012, a second hearing was held before the same ALJ. Plaintiff was now represented by counsel. Once again, Dr. Oberlander testified and opined that plaintiff was not disabled.

On December 11, 2012, the ALJ issued his opinion finding plaintiff was not disabled. The ALJ found that plaintiff had severe impairments of attention deficit hyperactivity disorder, depressive disorder, anxiety disorder, and personality disorder. R. 20. The ALJ then considered whether plaintiff met any of the Section 12 listings for mental disorders. In evaluating the Paragraph B criteria for these listings, the ALJ found that plaintiff had only a mild restriction in activities of daily living, that she had moderate difficulties in social functioning due to the fact

that she "has been in [a] number of tumultuous relationships that led to her attending domestic violence classes," that she had moderate difficulties with concentration, persistence or pace, and that she had no episodes of decompensation. R. 21-22. The ALJ then concluded that plaintiff had the residual functional capacity to perform the full range of work with the limitations that she could only understand, remember and carry out simple job instructions and could only tolerate occasional and superficial contact with co-workers, supervisors, and the general public. R. 22. In reaching this conclusion, the ALJ placed "great weight" on the opinion of Dr. Oberlander. R. 27.

## DISCUSSION

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Indeed, even when adequate record evidence exists to

support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

Plaintiff's primary argument in this appeal is that the ALJ relied on Dr. Oberlander's opinion even though he never reviewed the Bouchard report, a piece of evidence plaintiff asserts is crucial. Several points are not in dispute. First, it undisputed that the ALJ relied on Dr. Oberlander's opinion. The ALJ explained:

> The undersigned has afforded Dr. Oberlander's opinion with great weight, as it was based on a thorough review of the record in its entirety, including claimant's own testimony at the hearing. Dr. Oberlander is also familiar with the Social Security Administration and its implementing rules and regulations and he is a specialist within his own field, appropriately placing him in a position to opine as to the nature, duration, and frequency of the claimant's mental health symptoms and resulting functional limitations.

R. 27. Second, even though the ALJ stated above that Dr. Oberlander reviewed the record "in its entirety," it undisputed that Dr. Oberlander did not see the Bouchard report when he rendered his opinion because the report was submitted after the hearing. The government does not dispute this point.

The key issue in dispute is whether the Bouchard report could have changed Dr. Oberlander's opinion which in turn could have changed the ALJ's opinion. The parties debate this question in terms of whether the ALJ was obligated to seek an updated medical opinion from Dr. Oberlander. The government agrees that such an opinion is required if the ALJ believes it "may change the state agency medical consultant's finding regarding whether a claimant is disabled." Dkt. # 15 at 8 (quoting SSR 96-6p). However, the government argues that the Bouchard report contained basically nothing different from earlier evaluations. Although not labeled as such, the government is making a type of harmless error argument.

Plaintiff argues that the Bouchard report contained important new information. The report is potentially relevant to, among other things, Listing 12.08 (personality disorders) and more specifically to the severity of plaintiff's limitations regarding social interactions. Plaintiff focuses on two points from the report. One is Dr. Bouchard's assessment of plaintiff's GAF as 45. The other is Dr. Bouchard's diagnosis of plaintiff with paranoid personality disorder. Accordingly, this Court will also focus on these two arguments.

A GAF score "is a numeric scale of 0 through 100 used to assess severity of symptoms and functional level." *Yurt v. Colvin*, 758 F.3d 850, 853 n.2 (7th Cir. 2014) (citing *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. text revision 2000)). As part of her effort to regain her children, plaintiff saw several psychologists and one social worker who evaluated plaintiff and issued reports containing GAF scores. There is thus a trail of GAF scores over a three-year period. To recap, in June 2009, Dr. Renzi, assigned plaintiff a GAF score of 50. Five months later, in November 2009, Dr. Renzi rated her score as 55. In November 2010, Riplinger, a social worker, rated it at 55. Also in November 2010, Dr. Cushing rated it as 45-50. In August 2012, Dr. Bouchard rated it as 45. Overall, there were five ratings, four by psychologists.

Plaintiff's GAF scores were discussed both during the hearing and in the ALJ's opinion. At the hearing, Dr. Oberlander began his testimony by summarizing the medical evidence. In doing so, he initially only mentioned the 55 GAF score given by Riplinger. R. 51. However, later in the hearing, plaintiff's attorney asked Dr. Oberlander whether he had also considered the two GAF scores from Dr. Renzi and the one from Dr. Cushing. Dr. Oberlander then observed that although Dr. Renzi initially assessed plaintiff with a GAF, Dr. Renzi changed it "a few months" later to 55. R. 61. Dr. Oberlander seemed to believe this particular 5-point swing could be

relevant: "Now, I realize that a change of five scale points on a GAF may not be terribly significant, but it might tell us that in her second assessment she found some degree of improvement." *Id.* When asked whether a 50 GAF as opposed to a 55 GAF would make a difference, Dr. Oberlander noted that it could be "suggestive of" a person incapable of doing certain work, and he also noted that it would change his Paragraph B assessment of plaintiff's "social interactions" to moderately impaired rather than merely mildly impaired. R. 62-63.

This testimony suggests that Dr. Oberlander both thought that GAF scores were relevant in general to the overall analysis and specifically that a 5-point swing perhaps could alter his opinion. It also suggests that he placed some weight on his belief that plaintiff's condition was improving. Given these facts, it is possible (although by no means certain) that Dr. Oberlander would change his opinion if he were told that Dr. Bouchard rated plaintiff's GAF as 45 in August 2012. This would be a 10-point drop from the 55 baseline that Dr. Oberlander seemed to be relying on. This score also would undercut the suggestion that plaintiff was steadily improving.

Turning to the ALJ's opinion, as noted above, the ALJ gave "great weight" to Dr. Oberlander's opinion – not "controlling weight" as mistakenly asserted by plaintiff. Dkt. #14 at 2. This fact by itself suggests that if Dr. Oberlander's changed his opinion based on the Bouchard report, then the ALJ might also change his opinion.

It is true that the ALJ's opinion was written after the Bouchard report was submitted, and the ALJ discussed the report twice in his opinion. Thus, the ALJ clearly considered the Bouchard report in general. However, the ALJ never mentions the 45 GAF score in his opinion. The government argues that "there is no indication that [the ALJ] failed to consider [Dr. Bouchard's] assessed GAF score along with the rest of Dr. Bouchard's report." Dkt. # 15 at 4.

The government thus believes that it is reasonable to infer that the ALJ essentially found the 45 score to be, for some reason, not important enough to even mention in his opinion.

This inference is questionable for several reasons. First, the ALJ discussed the Bouchard report in detail in a long paragraph summarizing many specific observations from the report. It is hard to discern why these details would be deemed more important than the GAF score.

Second, the ALJ relied on *other* GAF scores. In fact, in his summary of the medical evidence, the ALJ presented a scenario of how plaintiff's initial 50 GAF score improved over time. Specifically, the ALJ began by noting that Dr. Renzi (incorrectly identified as Dr. Peggau) initially estimated plaintiff's GAF as 50. The ALJ then observed that a 50 GAF would be considered a low score, indicating "serious impairment in social, occupational, or school functioning." The ALJ next pointed out that several months later Dr. Renzi found that plaintiff's "GAF *had improved* to 55, indicative of *only* moderate symptoms or moderate difficulty in social, occupational, or school functioning." *Id.* (emphasis added). In the next paragraph, the ALJ noted that, after a 10-month gap in treatment, Riplinger rated plaintiff's GAF as 55, the same as Dr. Renzi's second evaluation. From this fact, the ALJ drew the following conclusion: "Despite the 10-month gap in treatment, [plaintiff's] GAF *remained stable*, and was estimated 55[.]" R. 25 (emphasis added). The way these facts were presented suggest that the ALJ believed both that the GAF scores were important and that they were on an upward trend.

Dr. Bouchard's assessment of a 45 GAF in August 2012 could undermine this improvement narrative. It also would lower the overall average of the five scores. For these reasons, the ALJ should have explicitly considered this GAF score in the same way he considered the other ones. This Court is not persuaded by the government's claim that the ALJ implicitly considered this score.

To be sure, the GAF scores were not the sole basis for the decision. It is also true that some have questioned how relevant GAF scores are or should be in the analysis.[2] The government points to cases, including ones from the Sixth and Eighth Circuits, allegedly downplaying the importance of GAF scores in social security cases. *See* Dkt. # 15 at 4-5. Indeed, this Court has questioned the relevance and reliability of GAF scores, based upon a cornucopia of case law. *See, e.g., Martinez v. Colvin,* 2014 U.S. Dist. LEXIS 41754, *25 n. 4 (N.D. Ill. 2014) *citing Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010). This Court need not assess these cases, nor discuss the relevance of GAF scores in the abstract, because plaintiff's argument is that the ALJ chose to rely on certain GAF scores, but then he failed to consider all such scores in an equal or fair way or at least did not offer an explanation for his implicit belief that some were more reliable than others. The Seventh Circuit has held that this type of cherry-picking justifies a remand. *See Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (it is improper for the ALJ to "seize upon" a GAF "high-water" mark of 60 while ignoring other lower scores); *Walters v. Astrue*, 444 Fed. Appx. 913, 919-20 (7th Cir. 2011) (remanding because ALJ "certainly thought GAF scores important, as he cited the high GAF scores" from certain doctors while ignoring a lower score of 45 -- "[i]f accepted, a GAF of 45 suggests that [the plaintiff] may be unable to work").[3]

---

[2] The Seventh Circuit recently noted that "the American Psychiatric Association no longer uses [the GAF] metric." *Czarnecki v. Colvin*, __ Fed. Appx. __, 2015 WL 55438, *6 (7th Cir. Jan. 5, 2015).

[3] In addition to ignoring Dr. Bouchard's GAF rating, the ALJ also downplayed Dr. Cushing's GAF score of 45-50. This rating was assessed at the same time as Riplinger's. Although the ALJ mentioned Dr. Cushing's rating in his opinion, buried at the end of a paragraph subsequent to the one in which Riplinger's rating is discussed, the ALJ did not acknowledge this rating when he asserted that plaintiff's GAF "remained stable" at 55 in November 2010. Emphasizing the GAF rating from Riplinger, a social worker, while downplaying a contemporaneous rating from Cushing, a psychologist, is another instance of impermissible cherry-picking.

Plaintiff's other main argument relating to the Bouchard report is that it diagnosed plaintiff with paranoid personality disorder. Plaintiff asserts that this diagnosis, and the related observations, might have been deemed relevant by Dr. Oberlander. In her report, Dr. Bouchard stated, among other things, that her testing showed that plaintiff had "significant hostility" and a "pronounced difficulty in interpersonal relationships." R. 809.

The government concedes in its response brief that this diagnosis was different from previous assessments. Dkt. # 15 at 8. Earlier evaluators focused more on other possible diagnoses such as adjustment disorder and bipolar disorder. The Court finds that the paranoid personality disorder diagnosis, along with the observation that plaintiff had a pronounced difficulty in interpersonal relationships, could have been deemed relevant by Dr. Oberlander and is therefore an additional reason why the ALJ should have obtained an updated medical opinion. This conclusion is also supported by comments both Dr. Oberlander and the ALJ made during the first hearing, which took place well before the Bouchard report was issued. At that first hearing, Dr. Oberlander summarized the medical evidence:

> I am not quite convinced that the bipolarity has been established. I would be in greater agreement with the most recent [] formulation of an adjustment disorder, with anxiety. I believe [there is] another psychiatric issue, which has not been addressed either by treating sources or consulting sources, and that is the presence of a personality disorder.

R. 91. Shortly after this comment, the ALJ observed:

> I agree with you wholeheartedly, Doctor, that the most presenting mental health issue for Shana is a personality disorder, which is missed by everybody but me. It just like glares out [in] the evidence and everything about her profile.

R. 92. In his opinion, the ALJ acknowledged Dr. Bouchard's diagnosis of a personality disorder; however, the ALJ only briefly mentioned it and did not analyze it in any serious way. This stands

in contrast to the comment above that he believed the personality disorder "glares out" from all the other diagnoses.

In sum, the Court finds that a remand is justified for the reasons stated above, and therefore will not address plaintiff's remaining arguments, including plaintiff's additional arguments regarding the Bouchard report or her argument that this court should remand the case pursuant to Sentence 6 based on a new report issued by a DCFS social worker in March 2013. All this evidence can be considered on remand. In remanding this case, the Court emphasizes that it is not suggesting that the ALJ reach any particular result on remand. As noted above, the GAF scores were not the only evidence. The record contains other documented and important evidence, some of it cited by the ALJ, that, when combined with acceptable and established arguments, could easily support a finding that plaintiff is not disabled. However, it is important that these questions be addressed first by the ALJ and the medical expert on remand. The Court takes this opportunity to remind plaintiff that she – not the ALJ – bears the burden of establishing that she is disabled. Dkt. #14 at 2; *Liskowitz v. Astrue,* 559 F.3d 736, 739-40 (7th Cir. 2009).

## CONCLUSION

For the reasons given, plaintiff's motion for summary judgment is granted, the government's motion is denied, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Date: March 2, 2015        By: _____
                                Iain D. Johnston
                                United States Magistrate Judge